WADE *v.* WILLIAMS.

5-284                                        264 S. W. 2d 51

Opinion delivered February 1, 1954.

*J. E. Still,* for appellant.

*D. H. Crawford,* for appellee.

WARD, J.   Appellants, defendants below, seek here
to reverse a chancery decree which quieted title in ap-
pellees to a small parcel of land on the ground of adverse
possession.  Most of the material facts are not in serious
dispute.

One John Wood, prior to 1930, was the owner of
a strip of land across the west side of the Northwest
quarter of the Southeast quarter of Section 20, Town-
ship 7 South, Range 19 West.  On January 30, 1930,
Wood conveyed to George W. Burris a portion of said
land described as: commencing at the Northwest corner
of said Northwest quarter of the Southeast quarter and
running East 6.62 chains to place of beginning, thence
South 20 chains, thence West 165 feet, thence North 20
chains, thence East 165 feet to the point of beginning.

On February 24, 1939, Burris conveyed the same land, by the same description, to appellees. On February 17, 1939, after the death of John Wood, his executor conveyed to C. E. Wade, by a metes and bounds description a parcel of land 272 feet wide off of the west side of said northwest quarter of the southeast quarter. Thus it will be seen that the north and south boundary line, as set out in the deeds mentioned above, between the two parcels of land was a common line 1,320 feet running from the north boundary to the south boundary of said forty. We will hereafter refer to this line as the true line. C. E. Wade later died and his widow and children are the appellees.

The proof shows that when Burris purchased from Wood in 1930 he had a surveyor run a line and thereupon built a fence along what he conceived to be the west side of his property. Later it developed that said fence began at the south end of the true line and ran north along or close to the true line approximately 800 feet where it veered slightly to the west and, running northerly, intersected the north line of said forty 20 feet west of where the true line intersected the north line of the same forty. Therefore the parcel of land in controversy is that portion of land east of the fence and west of the true line between the two parcels of land.

This suit was instituted by appellees to quiet title to the disputed parcel of land described above, claiming to own the same by adverse possession. The chancellor, finding the issues in favor of the appellees, quieted their title, and in our opinion the proof sustains his finding. The testimony shows that soon after Burris bought the east parcel of land from Wood in 1930 he had a surveyor run out the west line of his property and built a fence along the line staked out by the surveyor as above stated and that this fence has been maintained at the same location from that date to shortly before this suit was instituted. Burris stated that he claimed the land west as far as the fence and that he used the disputed land for a cow pasture. Burris further stated that when he

sold the land to appellees in 1939 that the fence was on the same line and that he placed appellees in possession up to the fence. Appellee Williams testified; that when he bought the land from Burris in 1939 the fence was still there and he understood that the fence was his west line, and; that the fence was maintained on the same line except for two gaps which he permitted to enable appellants to haul dirt. He further testified that he occupied and used the land as an orchard and that he built a hedge just east of the fence which finally grew to a great height. A plat was introduced in evidence which had been prepared by a surveyor in connection with Wade's Addition to Arkadelphia in 1946. Contained in the description on the plat is the following: "Note in checking over the above described property it was discovered that there was only 252 feet between the two very old land lines already having been under fence for several years, so we platted what was left." It is obvious from what has already been said that if the fence had been built on the true line there would have been 272 feet instead of 252 feet as mentioned above.

Under the well established rule regarding adverse possession, many times announced in the decisions of this court, the above facts are ample to support the chancellor's finding that appellees and their predecessor Burris had been in the actual, open, adverse and notorious possession of the disputed parcel of land for more than the required 7 years. Typical of the cases defining adverse possession is *Terrell* v. *Brooks,* 194 Ark. 311, 108 S. W. 2d 489, where the court, quoting in part from another authority, used this language:

" 'Notorious possession contemplates possession that is so conspicuous that it is generally known and talked of by the public or the people in the neighborhood.' On the question of notice, the textwriter says: 'The true owner must have knowledge or notice that the possession is hostile; and this may and must consist either of actual knowledge or of constructive notice arising from the openness and notoriety of the possession. * * * Possession which is so open, visible and notorious as to give

the owner constructive notice of an adverse claim need not be manifested in any particular manner; but there must be such physical evidence thereof as reasonably to indicate to the owner, if he visits the premises and is a reasonable man of ordinary prudence, that a claim of ownership adverse to his is being asserted'.''

Appellants do not controvert the facts set out above except that they show that neither Burris nor Williams ever told C. E. Wade or any of the appellees that he was holding the land adversely to them, and except that it was attempted to show by evidence, which we deem insufficient, that appellees and Burris were holding and occupying the disputed land with their permission. It is well settled of course, as indicated by the above citation, that actual notice of one claiming land by adverse possession is not always essential.

We deem it necessary to call attention here to an apparent error in the description of the land as contained in the court's decree as it is copied in the record. The first line of the description in the decree reads: ''Beginning at a point 6.62 chains east of the *northeast* corner of the northwest quarter of the southeast quarter . . .''. We take it that where the word *northeast* was used above it was meant to use the word *northwest*, otherwise the land described would be one-quarter of a mile east of the land it was evidently meant to describe. Also in the same description later on there appear to be two more errors which we describe in this way:

(a) The first part of the description contains these words: ''and running thence west *165* feet more or less to a point in Walnut Street which is directly north of the northeast corner of Wade's Addition . . .''. It appears clear to us where the figure ''165'' is used that it was meant to use the figure ''185''. All of the proof, including the admission of appellants, show that the north end of the fence intersected the line 20 feet west of the northwest corner of appellees' true description. In other words the north boundary of appellees' property according to their deed was 165 feet from east to

west and the court's decree evidently meant to give them another 20 feet.

(b)  Where it is evidently sought to describe the line running along the west side of the disputed parcel of land the description reads "Thence runs south *to* a certain fence, and follows said fence, . . .". It appears to us the word "along" should have been used instead of the preposition "to" used above.

We can feel sure that the description in the decree meant to describe the parcel of land lying immediately east of the old fence to conform with the proof. We are therefore remanding the cause with directions to the lower court to enter a decree describing the disputed parcel of land to conform with the views expressed above.